FILED

APR – 5 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| | ) | |
| REGINA BRAND, | ) | **4:23CR161-SEP/RHH** |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

A.  **The Defendant and Her Businesses**

At all times material to this Indictment, unless otherwise specified below:

1. Defendant **REGINA BRAND** resided in St. Peters, Missouri, within the Eastern District of Missouri.

2. Angels Voices was a nonprofit corporation registered with the Missouri Secretary of State's Office on September 27, 2017.

3. Brand Construction, Incorporated was a corporation registered with the Missouri Secretary of State's Office on February 1, 2012.

B.  **The Missouri State Assistance for Housing Relief Program**

4. The Consolidated Appropriations Act of 2021 authorized federal "Emergency Rental Assistance" dollars from the United States Department of Treasury to be provided to states to administer for the benefit of households impacted by the COVID-19 pandemic. The Missouri

1

Housing Development Commission ("MHDC") administered and distributed the federal Emergency Rental Assistance dollars for the State of Missouri under the Missouri State Assistance for Housing Relief Program ("SAFHR"). The SAFHR program provided rental assistance for households impacted by COVID-19. Under the SAFHR program, landlords could apply to the MHDC on behalf of eligible tenants for rental assistance to be paid directly to the landlord. Rental assistance under the SAFHR program included up to twelve months of rent arrears and up to three months of prepaid rent.

   5. To obtain rental assistance under the SAFHR program, a qualifying landlord or tenant was required to submit an electronic application to the MHDC. For SAFHR program applications, an applicant had to submit contact information for the landlord and the tenant, including a copy of the landlord's W-9 and a copy of the tenant's photo identification. Under the SAFHR program, the applicant was also required to submit a copy of the lease agreement along with the landlord's banking information. In exchange for the MHDC's rental assistance under the SAFHR program, landlords were also required to agree not to evict the tenant for a certain amount of time. To complete an application for rental assistance under the SAFHR program, applicants were also required to certify that their statements to the MHDC were true and correct to the best of their knowledge. The applications for rental assistance under the SAFHR program were submitted electronically. Once an applicant applied for rental assistance under the SAFHR program, the electronic application traveled by means of wire transmission through a server located in Nevada before arriving at the MHDC for processing.

C. **The Paycheck Protection Program**

   6. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable

loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

8. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia.

9. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. Carrollton Bank, Enterprise Bank & Trust, and Harvest Small Business Finance, LLC were third-party participating lenders in the Paycheck Protection Program.

## COUNTS ONE–THREE
### (Wire Fraud: 18 U.S.C. § 1343)

**A.      The Scheme to Defraud**

11.     Beginning by at least on or about January 1, 2021, and continuing through at least on or about June 30, 2022, in the Eastern District of Missouri, and elsewhere, the defendant, **REGINA BRAND**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the MHDC and participating PPP lenders and to obtain money and property from the MHDC and participating PPP lenders by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

**a.      Defendant's Missouri State Assistance for Housing Relief Program Fraud**

12.     It was part of the scheme and artifice to defraud that, between on or about September 1, 2021, until at least on or about June 30, 2022, Defendant submitted or caused to be submitted a total of at least twelve fraudulent applications for rental assistance under the SAFHR program to the MHDC.

13.     It was further part of the scheme and artifice to defraud that, for each of the fraudulent applications that Defendant submitted or caused to be submitted to the MHDC, Defendant listed, or caused to be listed, the landlord as either Angels Voices or Brand Construction. But, in truth and fact, neither entity ever served as the landlord for any of the tenants listed in the twelve fraudulent applications.

14.     It was further part of the scheme and artifice to defraud that Defendant submitted or caused to be submitted fraudulent lease agreements to the MHDC in support of each of the fraudulent applications for rental assistance submitted to the MHDC. In each of the fraudulent lease agreements, Defendant listed or caused to be listed either Angels Voices or Brand

4

Construction as the landlord. But, in truth and fact, neither Angels Voices nor Brand Construction ever served as the landlord for any of the tenants listed in the fraudulent lease agreements.

15. It was further part of the scheme and artifice to defraud that, for each of the twelve fraudulent applications for rental assistance that Defendant submitted or caused to be submitted to the MHDC, Defendant provided one of the two following bank accounts to receive rental assistance dollars from the MHDC: an Enterprise Bank & Trust account for Brand Construction (account number ending in 1277) or an Enterprise Bank & Trust account for Angels Voices (account number ending in 1279). Defendant was the only signor for both bank accounts that she included on the fraudulent applications for rental assistance to the MHDC.

16. It was further part of the scheme and artifice to defraud that Defendant electronically submitted or caused to be submitted each of the twelve fraudulent applications for rental assistance to the MHDC within the Eastern District of Missouri. After Defendant electronically submitted or caused to be submitted the fraudulent applications for rental assistance, those applications traveled by means of wire transmission through a server located in Nevada before arriving at the MHDC for processing.

17. It was further part of the scheme and artifice to defraud that, based on the material misrepresentations in Defendant's fraudulent applications for rental assistance, the MHDC wired a total of $96,825.00 to Defendant's bank accounts.

b. **Defendant's Paycheck Protection Program Fraud**

18. It was further part of the scheme and artifice to defraud that, between on or about April 1, 2020, until at least on or about August 25, 2021, Defendant submitted several fraudulent PPP loan applications to participating PPP lenders.

19. It was further part of the scheme and artifice to defraud that Defendant submitted a

5

fraudulent PPP loan application to Harvest Small Business Finance, LLC for Angels Voices on or about April 15, 2021. In that fraudulent PPP loan application, Defendant knowingly made numerous materially false and fraudulent representations. Among other things, Defendant falsely and fraudulently inflated the average monthly payroll and number of employees listed in the fraudulent PPP loan application that she submitted to Harvest Small Business Finance, LLC.

20. It was further part of the scheme and artifice to defraud that, based on the material misrepresentations that Defendant made in her fraudulent PPP loan application on or about April 15, 2021, Harvest Small Business Finance, LLC wired $40,535.55 to Defendant's Enterprise Bank & Trust bank account (account number ending in 1279).

21. It was a further part of the scheme and artifice to defraud that, instead of spending the $40,535.55 in PPP loan proceeds on payroll (as she claimed that she did), Defendant knowingly spent the PPP loan proceeds to pay for items that she knew were not authorized under the PPP, including on personal retail and car expenses.

**B.     Wire Transmissions**

22. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**REGINA BRAND,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

6

| Count | Date | Wire Description |
|---|---|---|
| 1 | 12/06/2021 | An electronic SAFHR application (#144745) for rental assistance that Defendant submitted to the MHDC through an out-of-state server from the Eastern District of Missouri. |
| 2 | 3/3/2022 | An electronic SAFHR application (#242257) for rental assistance that Defendant submitted to the MHDC through an out-of-state server from the Eastern District of Missouri. |
| 2 | 4/15/2021 | An electronic PPP loan application (SBA Loan #2761028904) that Defendant submitted to Harvest Small Business Finance, LLC through an out-of-state server from the Eastern District of Missouri. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
### (Aggravated Identity Theft: 18 U.S.C. § 1028A)

23. Each of the allegations of Paragraphs 1 through 22 of this Indictment is hereby incorporated by reference as if fully set forth herein.

24. On or about December 6, 2021, in the Eastern District of Missouri, the defendant,

**REGINA BRAND,**

did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of R.W., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person, in that the defendant submitted an electronic SAFHR application (#144745) for rental assistance to the MHDC claiming that R.W. was a tenant of Brand Construction and including a forged signature of R.W. on the fraudulent SAFHR application.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Three, the defendant shall forfeit to the United States of America any property

7

constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

  2.  If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney